IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CHARTER OAK FIRE INSURANCE | ) | |
|---|---|---|
| COMPANY and THE AUTOMOBILE | ) | |
| INSURANCE COMPANY OF HARTFORD, | ) | |
| | ) | |
| v. | ) | 1:10-cv-00138-MBC |
| | ) | |
| MATTHEW P. LAZENBY, et al. | ) | |

## OPINION

COHILL, Senior District Court Judge

Before the court are cross-motions for summary judgment in a declaratory judgment action under 28 U.S.C § 2201. Plaintiffs Charter Oak Fire Insurance Company and the Automobile Insurance Company of Hartford, Connecticut (hereinafter, collectively "Travelers"), a Connecticut insurance company, seek a declaration that they do not have an obligation to defend or indemnify Matthew P. Lazenby in an underlying tort action filed in the Erie County Court of Common Pleas. Matthew P. Lazenby's parents, Matthew F. and Tracie Lazenby, with whom he lived at all times relevant to this suit, held a Homeowners Insurance Policy (hereinafter "Homeowners Policy") and Personal Excess Umbrella Policy (hereinafter "Umbrella Policy") with Travelers, and Travelers is presently defending the underlying action under reservation of rights.

The Defendants in the instant action were originally Matthew F. and Tracie Lazenby (husband and wife), Matthew P. Lazenby, Kevin Bawol, Nicole Bawol, Autilli Bawol, and Stephanie Vitale. Matthew F. and Tracie Lazenby have been dismissed from the case, as they were not named as defendants in the underlying tort action. On September 20, 2010, the clerk of court entered default as to Matthew P. Lazenby and Stephanie Vitale, pursuant to Fed.R.Civ.P.

1

55(a) for failure to plead or otherwise defend. The remaining Defendants, Kevin Bawol, Nicole Bawol and Autilli Bawol ("Bawols" or "Defendants") filed briefs in opposition to Travelers' motion, as well as a motion seeking a declaration that Travelers does have a duty to defend and indemnify Matthew P. Lazenby. For the reasons that follow, the court concludes that Travelers does have a duty to defend under both policies, but dismisses without prejudice the declaratory judgment action on duty to indemnify.

Also before the court is Plaintiffs' Motion to Deem Facts Admitted and Material, in which the Plaintiffs claim that Defendants' concise statement of material facts does not comport with Local Rule 56. We will exercise our discretion and deny Plaintiffs' motion.

We have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

## I. Standard of Review

Summary judgment should be granted if the record, including pleadings, depositions, affidavits, and answers to interrogatories, demonstrates "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## II. Factual Background

### A. The Events of October 31, 2008

Unless otherwise noted, the following facts are not in dispute. Defendant Matthew P. Lazenby is the son of policyholders Matthew F. and Tracie Lazenby, and lived in their household

2

at all relevant times. Complaint for Declaratory Judgment ("Complaint") at 3. On October 31, 2008, Matthew P. Lazenby ("Lazenby"), who was 20 years old at that time, spent the afternoon and evening with his girlfriend, Defendant Stephanie Vitale ("Stephanie" or "Vitale"), and her twenty-three month old daughter, Defendant Autilli Bawol ("Autilli"). Id. They spent some time at Stephanie's mother's apartment, and left Stephanie's mother's apartment between 10:30 and 11:00 p.m. Ex. D (Transcript of Lazenby's Examination Under Oath (EUO)) at 64; Ex. E (Transcript of Lazenby's Deposition) at 17-22. Lazenby appears to admit he was intoxicated at this point, as he had been drinking on and off all day, drove over the median on the road and at another point, ran over a mail box. Defs.' M. for Summ. J. [Doc. 35] at 2. Once they got back from the apartment, Lazenby dropped Autilli and Stephanie off at Stephanie's apartment, and then went to the store to get cigarettes. Ex. D at 64; Ex. E at 17-22; Ex. I at 13 (Transcript of Stephanie Vitale's Deposition). While waiting for Lazenby to get back from the gas station, Vitale gave Autilli a bath, put her in her pajamas, and otherwise got her ready for bed, during which time Autilli's behavior and personality were normal. Ex. I at 28, 35-36.

When Lazenby returned, Vitale left to meet friends at a local bar, leaving Lazenby alone with Autilli. Ex. E at 78; Ex. I at 36. According to Lazenby, Autilli had a "temper tantrum," including crying hysterically and yelling for her mother for what Lazenby described as a "good while." Ex. D at 65; Ex. E at 17-22, 82. Vitale testified that it was typical for her daughter to become upset when Vitale left her presence. Ex. I at 37.

As Vitale left the apartment, she heard Autilli crying for her "mom." Id. Vitale nevertheless got into her car. Id. Lazenby picked up Autilli to try to calm her down. Ex. D at 65; Ex. E at 17-22, 81-82. When that failed, Lazenby showed her a stuffed animal, walked out of the room to see if she would calm down by herself, and talked with Autilli. Ex. D at 65; Ex. E at 17-22, 81-82, 115-16. When Autilli failed to calm down with these other efforts, Lazenby admits that he became "really

3

irritated" and was "frustrated." Ex. D at 65, 102; Ex. E at 17-22, 108-09.

Lazenby told Erie Police that he "lost it" with Autilli at this point. Ex. J at 28-29 (Deposition of Detective John Barber). He was trying to "make her…realize" that she "can't have a spasm, or like a temper tantrum, you know, like, you can't do that." Ex. G at 3-8 (Lazenby's Recorded Police Interview). According to Detective Barber's deposition testimony, Lazenby reported that he picked Autilli up under the armpits and shook her two separate times. Ex. J at 29. Lazenby's testimony differs in this regard; he testified that he only shook Autilli once and struck the left side of her head with an open hand. Ex. D at 65; Ex. E at 17-22, 85; Ex. G at 3-8. While being shaken, Autilli became quiet, Ex. J at 28-30, and her head rocked back and forth, from shoulder to shoulder. Ex. D at 77-78; Ex. E at 25-26. After Lazenby shook her, Autilli appeared to have fallen asleep, and Lazenby put her down in her bed. When he went back to check on her, she still appeared to be sleeping. Ex. E at 85-89

Vitale testified that shortly thereafter she returned to the apartment in order to retrieve identification to enter the bar. Ex. I at 37-38. Lazenby was exiting Autilli's room and he told Vitale that Autilli was sleeping. Id. at 38-39, 119. While Vitale was still at the apartment, Autilli began to choke on her own vomit. Id. at 39. Vitale testified that, after Autilli began to vomit, Lazenby began to cry and asked what he could do. Id. at 98-99. Vitale also testified that Lazenby was acting nervous, "panicked", and was smoking two cigarettes at the same time, which was odd for him. Id. at 98-99, 109-10, 140-50. Vitale asked that Lazenby give her a phone so that she could call 9-1-1, but he did not. Id. at 103-04.

After Lazenby left, approximately 10 minutes later, Vitale put Autilli in bed with her and stated that Autilli was vomiting throughout the night, though she had never previously vomited. Id. at 39-40, 43-44, 103. Stephanie thought it was highly unusual that Autilli had begun vomiting "out of nowhere," but attributed it to Autilli eating too much Halloween candy. Id. at 108-09. While Autilli was vomiting that night, she did not cry at all. Id.

4

At 10:00 the next morning, Autilli woke up and "projected vomit." Id. at 39-40. Vitale indicated that Autilli's eyes were "different" and her mouth was "lock jawed." Id. Stephanie sought medical help at this point. Id. According to medical records, Autilli suffered bruises on the helix of her left ear, as well as inside the canal of her left ear, on her forehead, and on her back. Ex. K at 32-37 (Deposition of Dr. Rachel Berger). Autilli also suffered multiple retinal hemorrhages in both eyes. Id. at 59-60. The CT scans of Autilli's head also demonstrated that she had an occipital skull fracture on the right side of her head. Id. at 48-49.

There does not appear to be any legitimate dispute that Lazenby caused Autilli's injuries. Stephanie Vitale, who had full legal custody of Autilli for her entire life up until this point, knew of no abuse to Autilli up until the night of October 31, 2008. Ex. I at 44-45. She never noticed any marks or bruises on Autilli prior to the night in question. Id. at 70-71, 110. Vitale cannot explain the various serious injuries suffered by Autilli other than the actions of Lazenby. Id. at 120-22. Vitale never struck or hit or shook Autilli, and Autilli was fine when Vitale left the apartment to meet her friends at the bar. Id.

### B. Criminal Proceedings and Guilty Plea

Detective John Barber of the Erie County Police Department interviewed Lazenby on the morning of November 2, 2008. Ex. J at 28-30. At first, Lazenby denied shaking or harming Autilli. Id. at 25-27. Detective Barber asked Lazenby to take a voice stress analysis test, a type of "lie detector test." Lazenby agreed. As this test was being arranged, however, Lazenby changed his version of events. Id. at 24-25. Lazenby admitted to Detective Barber that he "probably lost it" with Autilli. Id. at 28-29.

Lazenby told Detective Barber that Autilli began to cry because Vitale left, and because he had turned off the movie she was watching. Id. at 28-30. He said that Autilli was crying "mommy, mommy" and that he picked her up under her arms and shook her and said "your mommy is not here." Id. While he was shaking Autilli, she became quiet. Id.

5

After this point, the remainder of Lazenby's police interview was recorded on videotape. During the recorded portion of his police interview, Lazenby admitted that he shook Autilli two separate times, and that he "smacked" her on the left side of her head with his hand. Ex. G at 3-8. Lazenby, at the end of his recorded interview, stated that "I f***ed up. Again." Id. at 9.

On or around November 7, 2008, a criminal complaint was filed against Matthew P. Lazenby[1] arising out of the incident in question. Ex. Q (Erie County Criminal Complaint). Lazenby was charged with four separate counts of criminal conduct: aggravated assault, simple assault, endangering the welfare of children, and recklessly endangering another person. Id. On September 8, 2009, he pled guilty to Count 1 (aggravated assault) and Count 3 (endangering welfare of children). Ex. R (Guilty Plea Signature). Count 1, aggravated assault, reads as follows:

> The 20 year old male defendant did attempt to cause serious bodily injury to another, the 23 month old child, A.T., or causes such injury intentionally, knowingly or recklessly, under circumstances manifesting extreme indifference to the value of human life; by picking the child up twice and violently shaking her, causing the child's head to violently move back and forth in a whip-lash type motion, and by striking the side of the child's head. (citing 2703 (A)(1) of "PCC")[18 Pa. Cons. Stat. Ann. § 2702 (West 2005)].

Ex. Q.

Count 3, endangering welfare of children, reads as follows:

> ENDANGERING WELFARE OF CHILDREN – By committing the above acts, the defendant, who was a parent, guardian, or other person supervising the welfare of a child under 18 years of age, the 23 month old child, A.T., knowingly endangered the welfare of the child, by violating a duty of care, protection, or support. (citing 4304(A) of PCC) [18 Pa. Cons. Stat. Ann. § 4304 (West 2007)].

Ex. Q. Lazenby was represented by counsel at his voluntary guily plea. Ex. E at 43-45, 122; Ex. F (Guilty Plea Colloquy).

During his plea colloquy before Erie County Court of Common Pleas Judge Ernest DiSantis, Lazenby pled guilty to the aggravated assault charge (Count 1), admitting that he caused the injury to Autilli "intentionally, knowingly or recklessly, under circumstances manifesting extreme indifference

---
[1] We note that Vitale was sentenced in April 2009 for her role in the incident. Ex. I at 95.

6

to the value of human life." Ex. F at 5-6. Regarding the endangering welfare of children charge (Count 3), Lazenby pled guilty to "knowingly" endangering the welfare of Autilli. Id. The Court explained the nature of the charges, the consequences of the guilty plea, and that Lazenby was facing jail time as a result of his plea. Id.; Ex. E at 43-45. Lazenby was also advised at his plea colloquy that it was his choice whether to plead "guilty" or not, and that he had the right to plead "not guilty" and contest the charges at a trial. Ex. E at 43-45, 122; Ex. F. The charges of simple assault (Count 2) and recklessly endangering another person (count 3), were *nolle prossed* and dropped as part of the plea agreement. Ex. F at 7.

Lazenby's guilty pleas are the centerpiece of Traveler's arguments herein, because they call into question whether Autilli's injuries were accidental. Both the relevant Homeowners Policy and Umbrella Policy contain similar provisions that indicate coverage will not be triggered unless the bodily injury being claimed resulted from an "occurrence." Complaint at 5. Travelers argues, relying on Lazenby's admitted guilt, that Autilli's injuries did not result from an "occurrence." The Homeowners Policy (Ex. A) defines "occurrence" as nearly synonymous with "accident," specifically:

> 6. "Occurrence means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in
>     a. "Bodily injury"; or
>     b. "Property damage".

Similarly, the Umbrella Policy (Ex. B) defines "occurrence" as follows:

> 9. "Occurrence means:
>     a. an accident, including continuous or repeated exposure to substantially the same generally conditions that results in "bodily injury" or "property damage" during the policy period.
>     b. an offense, including a series of related offenses, committed during the policy period, that results in personal injury".

### C. Underlying Action

On October 21, 2010, Autilli, by and through her father Kevin Bawol, filed suit in Erie County Common Pleas Court against Lazenby, seeking monetary damages arising from Autilli's injuries, which were a "direct and proximate result of the negligence, recklessness and carelessness" on the part of Lazenby. Ex. C (Underlying Civil Complaint) at 4. This complaint alleges that Lazenby attempted to care for Autilli when he was unable to do so because of his intoxication, that he failed to provide sufficient care, failed exercise proper supervision, and that he failed to hold Autilli "in a safe a reasonable manner." Id. at 3-4. It further alleges that Lazenby "was mentally impaired such that he did not have a conscious awareness of the effect of his actions." Id. at 3. The instant action notwithstanding, Travelers has provided Lazenby counsel to defend the underlying action. Pls.' Br. in Opp. to Defs.' Summ. Judgment M. at 12 [Doc. 41]. The parties have coordinated discovery in the underlying action with discovery in the instant case, but to date there has been no trial date set for the underlying action. Transcript of Post-Discovery Hearing August 16, 2011 at 4, 10 [Doc. 33].

### III. Summary Judgment

Travelers moves for summary judgment on numerous grounds. Travelers argues that Autilli's injuries were not accidental based on Lazenby's admission of guilt, which Travelers claims collaterally estops Lazenby from claiming that his actions were unintentional; Lazenby's awareness of the natural and likely results of his actions; the severity of Autilli's injuries; and the doctrine of inferred intent. Pls.' M. for Summ. J. at 4-20. In response, Defendants argue that Lazenby's intoxication negates the effect of his plea and shows that he was not aware what the results of his actions would be. Defs.' Br. in Opp. at 9. They further argue that the severity of the injuries, without consideration of the insured's mental state, is irrelevant and that inferred

8

intent in this case is not the law in Pennsylvania. Id. at 10-11.

In contrast, Defendants' motion for summary judgment rests on the notion that Plaintiffs are unable to carry their burden of proof to demonstrate that the loss falls under one of the relevant exclusions. Defs.' M. for Summ. J. at 13.

In considering the motions for summary judgment, we are mindful that the Pennsylvania law, which the parties agree applies, holds that the "duty to defend is a distinct obligation, different from and broader than [the] duty to indemnify." Aetna Cas. & Sur. Co. v. Roe, 650 A.2d 94, 98 (Pa. Super. 1994). As such, we will consider these two duties separately.

### A. Duty to Defend

"An insurer's duty to defend an action against the insured is measured ... by the allegations in the plaintiff's pleadings." Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007). "An insurer must defend its insured if the underlying complaint alleges facts which, if true, would actually or *potentially* bring the claims within the policy coverage." Bd. of Pub. Educ. of Sch. Dist. of Pittsburgh v. Nat'l Union Fire Ins. Co. of Pittsburgh, 709 A.2d 910, 913 (Pa. Super. 1998). "It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." Roe, 650 A.2d at 98.

After a review of the underlying action, we find that Travelers clearly has a duty to defend, and they have conceded that point. *See* Pls.' Sur-Reply Br. at 7 ("Travelers does not dispute that [the] face of the underlying Complaint alleges negligent conduct which triggers the defense allegation."). The underlying complaint alleges facts, particularly Lazenby's intoxication and its effect on his actions, that would cause Autilli's injuries to fall within the insurance coverage, if proven. Implicit in Travelers' concession as to the duty to defend is that Lazenby is not collaterally estopped from litigating his intent regarding Autilli's injuries. Both

9

the Homeowners and Umbrella Policies are triggered only when an accident results in bodily injury. Pls.' M. at 4-5. In Pennsylvania, "absent a specific intent to cause the harm that resulted, [an] event is an accident for purposes of insurance coverage." Franklin Ins. Co. v. Roberts, 859 A.2d 492, 494 (Pa. Super. 2004). Specific intent is demonstrated, and an injury "is not "accidental," if the injury was the natural and expected result of the insured's actions." Baumhammers, 938 A.2d at 292. As such, if Lazenby were collaterally estopped from claiming that the injuries were unintentional, the underlying complaint would not allege an accident, and would thus not potentially fall within the policy coverage. By conceding a duty to defend, Travelers implicitly concedes, albeit unintentionally, that Lazenby is not collaterally estopped.

This concession accords with our analysis of the collateral estoppel issue. Pennsylvania courts allow the use of a criminal conviction "to establish operative facts in a subsequent civil case," but only if the latter is "based on those same facts." Commw. Dep't of Transp. v. Mitchell, 535 A.2d 581, 585 (Pa. 1987). Collateral estoppel based on a criminal conviction applies when the "party bound by the prior determination had adequate incentive to contest the issue and an adequate forum in which to litigate." Folino v. Young, 568 A.2d 171, 173 (Pa. 1990); *see also* Erie Ins. Exch. v. Muff, 851 A.2d 919, 931 (Pa. Super. 2004) (holding that "collateral estoppel is applicable when ... [a]n issue decided in a prior action is identical to one presented in a later action ... and [t]he party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.").

Under Pennsylvania law, Lazenby's "voluntary intoxication ... is [neither] a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense ...." 18 PA C.S. § 308. Conversely, for insurance cases such as this one, "imbibed intoxicants *must be considered* in determining whether the actor has the ability to

formulate an intent. If the actor does not have the ability to form an intent, the resulting act cannot be intentional." Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 953 (Pa. Super. 1992) (emphasis added). While intoxication does not "prevent a court from finding that [an actor] intends the natural and probable consequences of his actions," and may assist in forming an anti-social intent, the court must still consider the intoxication. State Farm v. Mehlman, 589 F.3d 105, 112-13 (3d Cir. 2009).

Lazenby pled guilty to aggravated assault, a crime which requires as a minimum *mens rea* recklessness with extreme indifference to human life. Pls.' M. at 7. Even assuming, *arguendo*, that an action with a heightened standard of recklessness can never be accidental, Lazenby is not collaterally estopped from litigating intent here. Pennsylvania maintains different standards for consideration of intoxication in criminal and civil actions, so the criminal and civil determinations of Lazenby's intent are neither identical, nor based on the same operative facts. The conviction establishes that Lazenby was at least exceedingly reckless as determined by the applicable criminal code, but only when his intoxication was not considered. In an insurance case, however, where intoxication must be considered, the criminal conviction does not *conclusively establish* that Lazenby had the requisite intent under the relevant policies. Furthermore, Lazenby had no incentive to litigate or contest the effect of his intoxication in the criminal case, as that evidence would have had no impact on the outcome of the case. Collaterally estopping Lazenby based on his conviction would punish him for not litigating a fact which was expressly legally irrelevant in the criminal case. In light of these considerations, we find that collateral estoppel does not apply in this case.

In accordance with Travelers' concession that it has a duty to defend Lazenby, we will grant Defendants' motion for summary judgment on that issue.

## B. Duty to Indemnify

As part of the instant declaratory judgment action, we are also asked to resolve the issue of Travelers' duty to indemnify Lazenby in the event that he is found liable in the underlying action. As we explained *supra*, the underlying state court action against Lazenby, sounding in negligence, has not yet been finally adjudicated. Accordingly, the duty to indemnify action is not yet ripe and we will dismiss it without prejudice.

### 1. Raising Ripeness *Sua Sponte*

As neither party has raised the issue of whether the action on duty to indemnify is ripe, we must first ascertain that we have the authority to do so on our own motion. The United States Court of Appeals for the Third Circuit "has recognized that considerations of ripeness are sufficiently important that the court is required to raise the issue *sua sponte* even though the parties do not." Cnty. Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 163 (3d Cir. 2006); Peachlum v. City of York, 333 F.3d 429, 433 (3d Cir. 2003). While ripeness can turn on either Article III or prudential considerations, the Supreme Court has held that "the question of ripeness may be considered on a court's own motion" even if it is based only on prudential concerns. Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003). Accordingly, we must determine if the duty to indemnify motion is ripe.

### 2. Ripeness

Ripeness "is at least partially grounded in the case or controversy requirement." Victoria Ins. Co. v. Mincin Insulation Servs., Inc., No. 08-909, 2009 WL 90644 (W.D. Pa. Jan. 14, 2009) (quoting Armstrong World Industries, Inc. by Wolfson v. Adams, 961 F.2d 405, 411 n. 12 (3d Cir. 1992)), and is "designed ... to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Nat'l Park Hospitality

12

Ass'n, 538 U.S. at 807. Accordingly, "the most important factors in determining whether a case is ripe are the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment." Lewis v. Alexander, No. 11-3439, 2012 WL 2334322 at * 9 (3d Cir. June 20, 2012) (citation and internal quotation marks omitted). We are also guided by Pennsylvania and federal case law, which are in accord in holding that declaratory judgments on an insurer's duty to indemnify are appropriate only after liability has been determined in the underlying compliant. *See, e.g.,* C. H. Heist Caribe Corp. v. Am. Home Assur. Co., 640 F.2d 479, 483 (3d Cir. 1981) (holding that a decision on insurer's "obligation to indemnify" was premature prior to a decision on the underlying liability); Unionamerica Ins. Co.. v. J.B. Johnson, 806 A.2d 431, 434 (Pa. Super. 2002) (holding that it "was premature for trial court to rule on the [duty to indemnify]" before the underlying claim was settled). We now turn to the application of the relevant ripeness factors.

### a. Adversity

In considering adversity, we must determine if the parties have opposing legal interests, such that "actual harm will result if the declaratory judgment is not granted." Hartford Fire Ins. Co. v. InterDigital Commc'ns Corp., 464 F. Supp. 2d 375, 379. Lewis, 2012 WL 2334322 at * 9. In Pennsylvania, "[t]he duty to indemnify arises only if, after trial … it is determined that the loss suffered is covered by the terms of the policy." Unionamerica, 806 A.2d at 434. Here, there is insufficient adversity between Travelers on the one hand, and Lazenby and the Bawols on the other. As to Lazenby, there is no adversity because he and Travelers share a similar interest, namely that he be found not liable for Autilli's injuries. *See* Victoria, 2009 WL 90644 at * 6. As to the Bawols, the adversity is at most hypothetical, because if Lazenby is not found liable for Autilli's injuries, Travelers will not have an interest adverse to them, at least in this case.

13

Furthermore, because Travelers has already conceded the duty to defend, declining to issue a declaration on the duty to indemnify does not harm Travelers, as it incurs no further loss by defending Lazenby.

### b. Conclusiveness

Even if we were to rule on the declaratory judgment action in favor of Travelers, the decision would not necessarily be conclusive. "It is not inconceivable that the Court could determine that coverage does not exist…yet [the Bawols] could ultimately prevail on a theory within the [p]olicies' coverage." InterDigital, 464 F. Supp. 2d at 381. The question of an insurer's duty to indemnify turns on the facts found in the underlying action, not the complaint. Id. A risk therefore arises "that, subsequent to the hypothesized declaratory judgment and the termination of the state-court litigation, yet a third round of litigation would be required to determine whether the state-court decisions were within the scope of the declaratory judgment." Victoria, 2009 WL 90644 at *6 (citations omitted). In addition, as previously noted, any declaration about duty to indemnify would be hypothetical, as it would be contingent on a liability determination in the underlying action. InterDigital, 464 F. Supp. 2d at 381. As such, any ruling we made would not be sufficiently conclusive, and could be procedurally awkward.

### c. Utility

Because of the uncertainty inherent in hypothetical decision making, any declaration as to Travelers' duty to indemnify would be of little utility to the parties. While the parties have indicated that our decision might influence the course of the underlying action by determining whether or not Travelers would have to pay in the event of liability, *see* Transcript of Post-Discovery Hearing, August 16, 2011 at 10 [Doc. 33], for the reasons noted above, this argument misses the point. Even a decision that Travelers has no duty to indemnify would not

14

conclusively establish the facts that a jury in the underlying case might find. While a decision negating the duty to defend would necessarily imply no duty to indemnify, at this time we "cannot *separately* declare the existence or non-existence of a duty to indemnify." Victoria, 2009 WL 90644 at *6.

### d. Conclusion

Numerous courts, both federal and state, have held that declaratory actions on duty to indemnify only become ripe after the underlying liability is settled. *See* Nationwide Ins. v. Zavalis, 52 F.3d 689 (7th Cir. 1995) (interpreting Pennsylvania law); C.H. Heist, 604 F.2d at 483; InterDigital, 464 F. Supp. 2d at 379; Cincinnati Ins. Cos. v. Pestco Inc., 374 F. Supp. 2d 451, 464-65 (W.D. Pa. 2004); Hartford Cas. Ins. Co. v. Dental Org. for Conscious Sedation, No. 10-3483, 2011 WL 1315486 (W.D. Pa. April 1, 2011) at *2; Victoria, 2009 WL 90644 at *6; Unionamerica, 806 A.2d at 434; Heffernan & Co. v. Hartford Ins. Co. of America, 614 A.2d 295, 298 (Pa. Super. 1992); United Services Auto Ass'n v. Elitzky, 517 A.2d 982, 992 (Pa. Super. 1986). Accordingly, we align ourselves with these courts, and hold that Travelers' action for duty to indemnify is not yet ripe. As such, the action must be dismissed without prejudice.

## IV. Motion to Deem Facts Admitted and Material

Nevertheless, we feel compelled to decide Plaintiffs' motion regarding Defendants' concise statement of material facts, as it relates to the duty to defend as well as the duty to indemnify. In responding to Plaintiffs' concise statement, Defendants often submitted "no response," rather than admitting or denying Plaintiffs' facts. *See generally*, Defendants' Concise Counterstatement of Material Facts [Doc. 43].

Local Rule 56(C)(1) requires that a party responding to another party's motion for summary judgment must prepare its own statement

15

> a. admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; [and] b. setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record.

LCvR 56. The responding party must also set "forth in separately numbered paragraphs any other material facts that are allegedly at issue ...." Id. Local Rule 56(A), however, states that "[t]he [Local Rule 56] procedures ... shall govern all motions for summary judgment made in civil actions unless the Court, on its own motion, directs otherwise, based on the particular facts and circumstances of the individual action." Id.

The Defendants' response (or lack thereof) to Plaintiffs' concise statement clearly does not comport with Local Rule 56(C), as it neither admits nor denies the veracity of the facts. Even if this were construed as a denial, it does not explain the basis therefor, as the local rule mandates. Similarly, Defendants' attempt to incorporate facts from their summary judgment brief does not follow the rule's requirement that facts be set forth in separately numbered paragraphs. While we recognize that some "courts in this district have strictly applied Local Rule 56 and deemed uncontroverted facts to be admitted," Emigh v. Miller, No. 08-1726, 2010 WL 2926213 (W.D. Pa. July 23, 2010), we are not inclined to so hold. Pursuant to Local Rule 56(A), in the interests of justice, we exercise our judicial discretion and decline to deem these "uncontroverted" facts as "admitted." The purpose of the concise statements is to assist the court in understanding which facts are in dispute for the purposes of deciding the summary judgment motions. Lewis v. Delp Family Powder Coatings, Inc., No. 08-1365, 2010 WL 3672240 (W.D. Pa. Sept. 15, 2010). The briefs accompanying the cross motions for summary judgment have more than sufficed in clarifying the key issue: the effect of Lazenby's intoxication on his intent regarding Autilli's injuries. Accordingly, we will deny Plaintiffs' motion to deem the facts admitted and material.

16

## V. Conclusion

For the reasons set forth above, we will grant Defendants' motion for summary judgment on Plaintiffs' duty to defend, deny Plaintiffs' motion for summary judgment on the duty to defend, and dismiss without prejudice the action for a declaratory judgment on duty to indemnify. In addition, we will deny Plaintiffs' motion to deem facts admitted and material. An appropriate order will be entered.

Date: July 18, 2012

Maurice B. Cohill, Jr.
Senior United States District Court Judge

Cc: Counsel of Record
    Matthew P. Lazenby
    Stephanie Vitale